JOE SIBLEY (admitted *pro hac vice*)
*sibley@camarasibley.com*
**CAMARA & SIBLEY LLP**
1108 Lavaca St., Suite 110263
Austin, TX 78701
Telephone: (713) 966-6789
Fax: (713) 583-1131

JUSTIN O. WALKER (SBN 275633)
*justin@walkerlawsd.com*
LORRIE A. WALKER (SBN 272637)
*lorrie@walkerlawsd.com*
JARED A. VELIZ (SBN 276191)
*jared@walkerlawsd.com*
**WALKER LAW, PC**
2247 San Diego Ave., Suite 136
San Diego, CA 92101
Telephone: (619) 839-9978

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| INFLUENCES, INC., a Delaware corporation<br><br>Plaintiff;,<br><br>v.<br><br>UNITED TALENT AGENCY, LLC, a Delaware limited liability company, erroneously sued as UNITED TALENT AGENCY, INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | CASE NO.: 2:22-cv-00296-TJH-MAR<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**<br><br>Submission Date:  July 15, 2022<br>Judge:          Hon. Terry J. Hatter |

Plaintiff INFLUENCES, INC. ("Influences" or "Plaintiff"), hereby submits the following Opposition to Defendant UNITED TALENT AGENCY, LLC's ("UTA" or "Defendant") Motion to Dismiss ("MTD") First Amended Complaint ("Complaint") Pursuant to Fed. R. Civ. Proc. 12(b)(6):

## SUMMARY OF ARGUMENT

Contrary to Defendant's contentions in the MTD, Plaintiff's Complaint—with the exception of the first claim—pleads facts sufficient to support each of its claims and none of these claims are precluded as a matter of law.  Viewing the pleaded facts in "the light most favorable" to Plaintiff and "all reasonable inferences" drawn in favor of Plaintiff's claims, the MTD fails on all fronts.  See, e.g., Skilstaf, Inc. v. CVS Caremark Corp., 669 F.3d 1005, 1014 (9th Cir. 2012); Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  Alternatively, however, to the extent the Court may feel the Complaint requires more detailed facts pleaded, Plaintiff respectfully requests leave to amend.

## II.    RELEVANT FACTS AS PLED

Plaintiff will address the relevant facts pleaded with respect to each challenged cause of action and argument herein in the Argument section.

## III.    LEGAL STANDARD

The notice pleading requirement of "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), creates a "powerful presumption against rejecting pleadings for failure to state a claim," and prevents courts from granting motions to dismiss absent exceptional circumstances. Gilligan v. Jamco Dev. Corp., 108 F.3d 246, 249 (9th Cir. 1997).  Indeed, Courts have viewed with "disfavor" motions to dismiss under Rule 12(b)(6) because of the lesser role pleadings play in federal practice and the liberal policy regarding amendment.  See Lormand v. US Unwired, Inc., 565 F.3d 228, 232 (5th Cir. 2009) (Rule 12(b)(6) motions "viewed with disfavor and rarely granted");  Broam v. Bogan, 320 F. 3d 1023, 1028 (9th Cir. 2003) (Rule

12(b)(6) dismissal with prejudice proper only in "extraordinary" cases.   "'[T]he motion to dismiss for failure to state a claim is viewed with disfavor and rarely granted.'" Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc., 677 F.2d 1045, 1050 (5th Cir. 1982) (quoting 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357, at 598 (1969)).

A court may dismiss a claim "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002). A court may not dismiss a complaint in which a plaintiff has alleged enough facts (taken as true) to state a claim for relief that is "plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A complaint meets this standard when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Lacey v. Maricopa County, 693 F.3d 896, 911 (9th Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009)).

When deciding a motion to dismiss, a court must accept "all factual allegations in the complaint as true and constru[e] them in the light most favorable to the nonmoving party." Skilstaf, Inc. v. CVS Caremark Corp., *supra*, 669 F.3d at 1014; OSU Student Alliance v. Ray, 699 F.3d 1053, 1058 (9th Cir. 2012); see also Guillen v. Bank of America Corp., No. 5:10-cv-05825, 2011 WL 4071996 (N.D. Cal. 2011).  Moreover, a court must "draw all reasonable inferences in favor of the nonmoving party." Usher v. City of Los Angeles, *supra*, 828 F.2d at 561.

Where a complaint is inadequate, leave to amend the complaint is common. See, e.g., Butt v. United Brotherhood of Carpenters & Joiners of America, No. 09–4285, 2010 WL 2080034 (E.D. Pa. May 19, 2010).

# IV.   <u>ARGUMENT</u>

Defendant argues that all of Plaintiff's four causes of action should be dismissed pursuant to Rule 12(b)(6):  (1) intentional interference with contractual relations; (2) intentional interference with prospective economic relations; (3) negligent interference with prospective economic relations; and (4) statutory unfair business practices claim.  For the reasons discussed below, Plaintiff will show that Plaintiff has adequately pleaded the final three of these causes of action in the Complaint.  Alternatively, Plaintiff will show that it should be granted leave to cure any pleading defects with an amended pleading.

## A.   **Intentional Interference With Contractual Relations.**

Plaintiff concedes this argument and consents to dismissal of this claim as the relationships at issue were at-will and, therefore, were not "contracts" per se and should be brought as "interference with prospective economic relations" claims as discussed below.  *See* <u>Lovesy v. Armed Forces Benefit Ass'n</u>, 2008 WL 696991, at *31 (N.D. Cal. Mar. 13, 2008)

## B.   **Intentional Interference With Prospective Economic Relations.**
### 1.   **Defendant's own cases contradict its argument that Plaintiff cannot bring claims for "at will" relationships.**

Defendant's first argument is that Plaintiff's claims cannot lie because they are "contracts" even though they were "at will".  But Defendant speaks out of both sides of its mouth in the MTD because Plaintiff concedes that the relationships Plaintiff sues over can be considered "at will".  The case Defendant cites for the proposition that "at will" agreements cannot give rise to intentional interference with contract claims, expressly recognizes that "at will" relationships give rise to "interference with prospective economic relations" cases.  *See* <u>Lovesy</u>, 2008 WL 696991, at *31 (citing <u>Reeves v. Hanlon</u>, 33 Cal. 4th 1140, 1151, 17 Cal. Rptr. 3d

4

289, 95 P.3d 513 (2004) (holding interference with an at-will contract is more properly viewed as interference with a prospective economic advantage)).  So, by demonstrating that the relationships at issue are "at will", Defendant necessarily prescribes the tort recipe of "intentional interference with a prospective economic advantage" as the correct tort claim.

The cases Defendant string cites on page 14 of the MTD (<u>Roy Allan Slurry Seal, Inc. v. Am. Asphalt S., Inc.</u>, 2 Cal. 5th 505, 517 (2017); <u>Westside Ctr. Assocs. v. Safeway Stores 23, Inc</u>., 42 Cal. App. 4th 507, 524 (1996); <u>KEMA, Inc. v. Koperwhats</u>, 658 F. Supp. 2d 1022, 1034 (N.D. Cal. 2009); <u>O'Connor v. Uber Techs., Inc.</u>, 58 F. Supp. 3d 989, 997 (N.D. Cal. 2014)) are completely unavailing because none of them hold that a plaintiff cannot sustain this tort claim based on "at will" relationships.  Rather, these cases simply observe that this tort—unlike intentional interference with contractual relations—protects noncontractual business relationships.  An at will relationship is considered "noncontractual" for purposes of this tort claim.  *See* <u>Lovesy</u>, 2008 WL 696991, at *31.  Therefore, Defendant's arguments fail.

Alternatively, if Plaintiff needs to clean up the pleadings to make clear there were no contracts for a specified term—although the Court is required to presume this is the case—Plaintiff can clearly correct this in an amended pleading and the Court should freely grant leave for Plaintiff to do so.  However, Plaintiff has already pleaded this in the alternative.  *See* Complaint at ¶ 34 ("Plaintiff had valid contracts and/or ongoing economic relationships…").

## 2.    Plaintiff Satisfied Rule 9(b).

Defendant next argues that Plaintiff has failed to plead with requisite specificity under Rule 9(b) with respect to the second claim based on one paragraph that relates to punitive damages.  MTD at 6 (citing Complaint at ¶ 7).  However, the

1  case Defendant cites is <u>Cisco Sys., Inc. v. Dixon Computer, Inc.</u>, 2021 WL
2  5848080, at *9 (N.D. Cal. Dec. 9, 2021).  In that case, the court held that the
3  plaintiff had only made conclusory allegations as to whether there was an
4  "economic relationship . . . with a probability of future economic benefit" and that
5  the defendant's interference "was wrongful by some legal measure other than the
6  fact of interference itself."  *Id.*  However, Plaintiff has clearly and specifically
7  pleaded these facts (*see* Complaint at ¶ 19-24) and Defendant does not argue
8  otherwise in this portion of the MTD.

9      Defendant also cites to <u>AlterG, Inc. v. Boost Treadmills LLC</u>, 2019 WL
10  4221599, at *39-40 (N.D. Cal. Sept. 5, 2019) to support this proposition.  However,
11  in that case, the plaintiff alleged that the acts of interference "formed a unified
12  course of fraudulent conduct" as the basis of the claim.  *Id.*  The <u>AlterG</u> court
13  recognized that Rule 9(b) only applies where fraud is an essential element of the
14  claim – not to other portions of the operative complaint.  *Id.*  Here, Defendant points
15  only to a general allegation regarding punitive damages in the Complaint that
16  includes the word "fraud" to argue the entire Complaint is governed by Rule 9(b).
17  MTD at 6 (citing Complaint at ¶ 7).  But the second claim does not require "fraud"
18  as an essential element (*see* MTD at 13 (citing <u>Korea Supply Co. v. Lockheed</u>
19  <u>Martin Corp.</u>, 29 Cal. 4th 1134, 1164-65 (2003)) and Plaintiff does not plead *any*
20  aspect of fraudulent conduct—much less "a unified course of fraudulent conduct" as
21  in *AlterG*—to support this claim in Second Cause of Action (*see* Complaint at ¶¶
22  32-38).

23      Accordingly, the MTD fails on this point.  At most, it would only apply to the
24  punitive damages aspect of the Complaint – not whether the Complaint states claims
25  on which relief can be granted, which is the standard for Rule 12(b)(6).  Relief can
26  be granted on this claim regardless of whether Plaintiff is entitled to punitive
27  damages.  To the extent Plaintiff is required to plead specific fraudulent conduct,
28

Plaintiff points the Court to the specific conduct of:  (1) UTA's call with Tomlinson wherein Influences's integrity and competency was impugned (Complaint at ¶ 22); (2) UTA being "pushy" and "untrustworthy" with Tomlinson (*id.*); (3) UTA's encouraging Bails to not pay the agreed upon amount in his at will relationship with Influences (*id.* at ¶ 23); and (4) UTA "advising" Wylie out of her relationship with Influences (*id.* at ¶ 24).

To the extent the Court finds these allegations are both necessary to the Second Claim and inadequately pleaded, Plaintiff requests leave to release with greater specificity.

### 3.       Plaintiff Alleged Independently Wrongful Acts.

Defendant closes its argument for dismissal of the Second Claim by arguing that Plaintiff supposedly failed to allege an independently wrongful act.  But then, in the same argument section, Defendant answers itself.  Defendant acknowledges that, in the Complaint, Plaintiff pleads that it was privy to conversations wherein UTA made statements to Tomlinson and Bails that were "false and disparaging" and which impugned the "integrity and competency" of Influences.  Complaint at ¶¶ 22, 35.  Plaintiff alleges that this gives rise to an inference that Defendants closed door meetings with the other parties (the D'Amelios).  Defendant then complains there is not "specificity" as to these allegations.  But these are not allegations of fraud that would be subject to Rule 9(b) and, therefore, they are not subject to a heightened pleading requirement.  All of the string cited cases Defendant cites to support this argument are fraud cases, making them inapposite to this case.  *See* MTD at 15-16.

Next, Defendant argues that Plaintiff failed to allege this conduct was independently actionable.  But there is no case that Defendant cites that requires a Plaintiff to claim the magic words that "this conduct is independently actionable".  The only question is whether the conduct complained of would constitute an

independently tortious act and the answer is "yes".  Where a plaintiff alleges that a defendant interfered with economic relationships through false and disparaging statements, this sufficiently meets the "independently tortious" element of this claim.  *See* <u>Silicon Labs Integration, Inc. v. Melman</u>, 2010 U.S. Dist. LEXIS 20385, at *11-12 (N.D. Cal. March 8, 2010) (RMW) (denying motion to dismiss claim for intentional interference with economic advantage where plaintiff sufficiently alleged that defendant made a false statement about plaintiff to meet the independently wrongful conduct requirement).  Therefore, because Plaintiff has adequately pleaded business disparagement/defamation as independently wrongful conduct, the MTD must be denied on this point.

Alternatively, Plaintiff requests leave to replead with greater specificity as to the specifics of the business disparagement/defamation that underlies this claim.

## C.     Negligent Interference With Prospective Economic Relations.

For many of the same reasons as the Second Claim, the MTD fails as to the Third Claim.

As discussed above, Plaintiff has alleged an independent legal duty that underlies the claim.  Namely, not to disparage or defame Plaintiff, which can serve as a predicate action to a claim for interference with economic relations.  *See, e.g.,* <u>Silicon Labs Integration, Inc.</u>, 2010 U.S. Dist. LEXIS 20385, at *11-12.  Plaintiff does not base the "legal duty" on a general duty not to poach clients – but rather on a duty not to use unlawful and independently tortious means to do so (defamation/business disparagement) as discussed above.  This dispenses with all of Defendant's arguments regarding lack of duty, independently wrongful acts, and competitor privilege.  <u>Orion Tire Corp. v. Gen. Tire, Inc.</u>, CV 92-2391 AAH(EEx), 1992 U.S. Dist. LEXIS 20224, at *8 (C.D. Cal. Aug. 17, 1992) (recognizing that competitor privilege and general lack of duty not to divert business of another to

1    oneself does not apply where the competitor uses "unlawful means to accomplish its

2    goal" are used) (citing Chicago Title Ins. Co. v. Great Western Fin. Corp., 69 Cal.

3    2d 305, 70 Cal. Rptr. 849, 444 P.2d 481 (1968)).

4         Even a cursory contemplation of the effects of Defendant's argument reveals

5    its absurdity.  Taken at face value, a competitor has a "privilege" to defame and

6    disparage another business to steal its customers with no legal recourse.  The

7    "competitor privilege" and the "lack of duty" simply means there is not a general

8    duty amongst competitors not to go after each other's customers.  It does not mean

9    that there is competitive anarchy wherein those competitors can defame and

10   disparage en route to taking another party's business as the cases above (and even

11   Defendant's own cases cited) establish.

12        Finally, Defendant argues that because Plaintiff has alternatively pleaded a

13   claim for intentional interference with economic relations that this thereby results in

14   dismissal of the count for negligent interference.  Plaintiff does not dispute that it

15   cannot recover on both claims at trial, but this does not mean at the pleadings stage

16   it cannot plead both intentionality and negligence.  Unlike the case cited by

17   Defendant, AccuImage Diagnostics Corp. v. Terarecon, Inc., 260 F. Supp. 2d 941,

18   956 (N.D. Cal. 2003), Plaintiff does allege negligence in the Complaint.  *See*

19   Complaint at ¶¶ 41-42.  Pleading in the alternative as Plaintiff has done is permitted.

20   *See* Aholelei v. Dep't of Pub. Safety, 488 F.3d 1144, 1149 (9th Cir. 2007) ("[I]n

21   light of the liberal pleading policy embodied in Rule [8] . . . a pleading should not be

22   construed as an admission against another alternative or inconsistent pleading in the

23   same case.").

24        Alternatively, Plaintiff requests leave to plead more particularly as to these

25   matters.

26

27

28

### D.      Economic Loss Rule.

The economic loss rule is inapplicable here because it only applies to "contracting parties." United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp., 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009).  Plaintiff and Defendant were not contracting parties.  There is no allegation that they were.  The economic loss rule does not apply.

Though, even assuming *arguendo* that the rule did apply (which it doesn't), "California's economic loss rule has a second category of exceptions for breach of a noncontractual duty." *Id.* at 1181.  "California courts have found exceptions to the economic loss rule in the noncontractual duty category where the conduct also [...] breaches a "duty" not to commit certain intentional torts." *Id.*  Therefore, even if the rule did apply (and it doesn't), Defendant's commission of an intentional tort carves out an exception to the rule's application.  Either way, the economic loss rule is inapposite to this analysis.

### E.      Unfair Competition/Business Practices Claim.

Defendant challenges the UCL claim by arguing that, because an adequate remedy at law exists, Plaintiff cannot seek equitable relief.  Defendant contends the recovery available at law to Plaintiff is commensurate with the equitable relief sought.  This is incorrect.

Plaintiff's claims for interference with economic relations are tethered to Plaintiff's expectancy from the contracts that Defendant tortiously interfered with.  These are the amounts pled throughout the complaint, *e.g.* "Charli:$2,300,000.00 ... Dixie: $1,400,000.00." *See, e.g.,* Complaint at ¶¶ 30, 37.  In contrast, Plaintiff's statutory § 17200 claim seeks "restitution damages arising from Defendant's unlawful and/or business acts or practices, in an amount to be established according to proof, **calculated by all profits that Defendant has realized** from Charli, Dixie, Tomlinson, and Bails since their relationship with Plaintiff was severed due to

1  Defendant's unlawful business practice(s)."  Complaint at ¶ 52.  Plaintiff then prays

2  for "restitution of **ill-gotten gains** from Defendant."  *Id.* at 54.

3       The critical difference between these two claims for relief is that Plaintiff's

4  statutory UCL claim seeks an additional, unavailable recovery at law of restitution

5  of *Defendant's* ill-gotten gains, as distinct from *Plaintiff's* lost gains.   Recovery of

6  Defendant's ill-gotten gains is unavailable as a damage *vis a vis* Plaintiff's tortious

7  interference claims because Plaintiff can only recover for all harm Plaintiff suffered.

8  *See, e.g., Roy Allan Slurry Seal, Inc. v. American Asphalt South, Inc.*, 2 Cal. 5th 505,

9  512 (2017) ("economic harm proximately caused by the defendant's action").  Ill-

10  gotten gains to Defendant encompasses a broader spectrum of things besides just the

11  harm Defendant caused Plaintiff.

12       An obvious ill-gotten gain to Defendant as the result of tortiously interfering

13  with Plaintiff's economic relationships would be the interest that Defendant gained

14  on the money it was unjustly enriched with – something unavailable as damages to

15  Plaintiff.  *See, e.g., Juarez v. Acadia Financial, Ltd.,* 152 Cal. App. 4th 889, 914-

16  917 (2007) (affirming interest earned on ill-gotten gains as restitution available

17  under the UCL). Additionally, it is likely that Defendant, after tortiously interfering

18  with Plaintiff's economic relationships, negotiated more profitable deals with the

19  influencers than Plaintiff had for the same or similar services.  It is further plausible

20  that Defendant secured additional deals with the influencers, which it would not

21  have but for its unlawful conduct, that allowed Defendant to realize even further ill-

22  gotten profits.  It is all of these types of recovery that are unavailable as damages at

23  law to Plaintiff and for which equitable restitution is properly sought under

24  Plaintiff's UCL Claim.

25       To the extent the Court feels the complaint requires additional specificity as

26  to these points, Plaintiff can easily offer the foregoing allegations in an amended

27  complaint to buttress the claim.

28

1      **1. Plaintiff's UCL is Clearly Pled.**

2          The UCL's "coverage is sweeping, embracing anything that can properly be

3   called a business practice and that at the same time is forbidden by law." *Cel-Tech*

4   *Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180

5   (1999) (internal citations omitted).   "The statutory language referring to 'any

6   unlawful, unfair, *or* fraudulent' practice [] makes clear that a practice may be

7   deemed unfair even if not specifically proscribed by some other law." *Id.* (Italics in

8   original.) "An unfair business practice occurs when it offends an established public

9   policy or when the practice is immoral, unethical, oppressive, unscrupulous or

10  substantially injurious to consumers." *Id.* at 184.

11         Plaintiff alleges, with specificity, exactly this type of conduct underlying its

12  UCL claim at ¶¶ 19-24 of the Complaint, and when presenting the language for the

13  cause of action later in the Complaint, Plaintiff states that it is repeating and re-

14  alleging each and every foregoing allegation as though set forth again (¶ 46.)

15  Plaintiff again alleges, "Defendant was engaged in a scheme to operate in violation

16  of law…outlined above with respect to Defendant's interference with Plaintiff's

17  contract and/or economic relationships."  Complaint at ¶ 48.  Defendant argues this

18  is insufficient; ostensibly, Defendant seeks Plaintiff to copy and paste the earlier

19  allegations at this later page in the complaint.   This is an argument of form over

20  substance, and it should be disregarded.

21         Defendant attempts to support its argument by citing to <u>Bonner v. Redwood</u>

22  <u>Mortg. Corp.</u>, 2010 U.S. Dist. LEXIS 29969.  However, Defendant fails to fully

23  quote the <u>Bonner</u> court who stated that in their case, "the complaint failed to state a

24  claim for *any* "unlawful" business act or practice […] no factual allegations were

25  pled to put defendants on notice as to what "unfair" practices formed the basis for

26  this claim […] and the complaint set forth no factual allegations whatsoever to meet

27  the particularity requirements [for pleading fraud.]"  2010 U.S. Dist. LEXIS 29969

28

at *22-23 (emphasis in original).  The <u>Bonner</u> Court also noted that the complaint there was clearly boilerplate, stating, "[t]he complaint [] bears obvious indicia of being derived from generic foreclosure pleadings filed throughout the country[.]" *Id.* at *4-5.

Conversely, here, the complaint is hardly generic nor vague.  The complaint alleges, "UTA began a cutthroat campaign to poach [clients] from Influences using unscrupulous methods."  Complaint at ¶ 19.  UTA's representative, Goodfried, flew out to meet with Plaintiff's clients right after they began their relationship with Plaintiff in December 2019/January 2020.  *Id.* at ¶ 20.  At the same time, the clients informed Plaintiff that they were firing Plaintiff, and shortly after they signed with UTA.  *Id.* at ¶ 21.

Further, Plaintiff's founder, Ms. Jacob, overheard UTA's representative Weinstein disparage Plaintiff to a client and encourage that client to terminate her relationship with Plaintiff, stating that UTA would "get her out of her contract" with Plaintiff.  *Id.* at ¶ 22.  UTA's representative disparaged Plaintiff's integrity and competency.  *Id.*  Ultimately, UTA's coercive conduct resulted in the client breaking her agreement with Plaintiff and signing with UTA.  *Id.*

Additionally, UTA representative Mayster knew about and actively worked to interfere with Plaintiff's agreement with another client.  *Id.* at ¶ 23.  Mayster convinced that client to re-negotiate his agreement with Plaintiff to reduce Plaintiff's commission.  *Id.*  Subsequently, Mayster convinced the client to breach his agreement with Plaintiff and then sign with UTA.  *Id.*  Finally, another of Plaintiff's clients terminated her relationship with Plaintiff less than a month after signing an agreement with Plaintiff, but after UTA got involved in "advising" her about her relationship with Plaintiff.  *Id.* at ¶ 24.

These are not boilerplate allegations. They are specific allegations of actionable conduct in violation of § 17200.  Defendant argues that this conduct does

not significantly threaten or harm fair competition.  See MTD at 23:7-14.  Simply put, Defendant is wrong.  "The tort of intentional or negligent interference with prospective economic advantage imposes liability for improper methods of disrupting or diverting the business relationship of another <u>which fall outside the boundaries of fair competition.</u>"  <u>Settino Associates v. Environ Systems, Inc.</u>, 14 Cal. App. 4th 842, 845 (1993) (emphasis added).

### 2.  Plaintiff's Prayer for Restitutionary Disgorgement is Proper.

Defendant erroneously argues that Plaintiff cannot seek restitution because it is not seeking "the return of any money that was once it its possession."  See MTD at 24:26-27.  Defendant attempts to support its position with a cherry-picked recitation of the court's holding in <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th 1134 (2003).  What Defendant does <u>not</u> quote from the <u>Korea Supply</u> case is that "disgorgement of money obtained through an unfair business practice is an available remedy in a representative action [*aka* a § 17200 action] only to the extent that it constitutes restitution."  <u>Korea Supply Co. v. Lockheed Martin Corp</u>., 29 Cal. 4th 1134 at 1145.

The meaning of this was explored by the California Court of Appeal in <u>Juarez v. Arcadia Financial, Ltd.</u>, 152 Cal. App. 4th 889 (2007).

The <u>Juarez</u> Court stated:

> The acknowledgment in *Korea Supply* that the concept of restitution is broader than simply the return of money that was once in the possession of the person from whom it was taken is not surprising. The basic premise of this type of remedy is that a person who has been unjustly enriched at the expense of another is required to make restitution to the other.  Ordinarily, the measure of restitution is the amount of enrichment received…, but as stated in Comment e, if the loss suffered differs from the amount of benefit received, *the measure of restitution may be more or less than the loss suffered or more or less than the enrichment.*"

14

1    152 Cal. App. 4th at 915 (italics in original).

2          In <u>Juarez</u>, the Court held that interest earned by the Defendant on the alleged

3    ill-gotten gains in violation of the UCL was also available as restitution to the

4    Plaintiff, even though the Plaintiff had never had possession of such amounts.  <u>Id</u>. at

5    914-917.  The Court stated, "the plaintiffs arguably have an ownership interest in

6    any profits [Defendant] may have gained through interest or earnings on plaintiff's

7    money that [Defendant] wrongfully held." <u>Id.</u> at 915.  In essence, the <u>Juarez</u> Court's

8    view was that, provided there is a reasonable nexus between profits and what was

9    taken by the defendant, equity allows the plaintiff to recover not only what was

10   taken, but also any profits generated from what was taken.

11         Importantly, the plaintiff need not have provided the money or property

12   directly to the defendant in order to seek it as restitution.  In <u>Shersher v. Superior</u>

13   <u>Court</u>, the plaintiff brought a UCL action against Microsoft, alleging that the

14   packaging for certain Microsoft wireless routers, adapters and other products sold

15   through retailers misrepresented the capabilities of the products. 154 Cal. App. 4th

16   1491, 1494-1495 (2007).   Microsoft successfully moved to strike plaintiff's prayer

17   for restitution, arguing that <u>Korea Supply</u> prevents plaintiffs from seeking to recover

18   money or property they did not pay directly to the defendant.  *Id.* at 1495.  The

19   Court of Appeal reversed, stating that <u>Korea Supply</u> was not "intended to preclude

20   consumers from seeking the return of money they paid for a product that turned out

21   to be not as represented.  Rather, the holding of <u>Korea Supply</u> on the issue of

22   restitution is that the remedy the plaintiff seeks must be truly 'restitutionary in

23   nature'—that is, it must represent the return of money or property the defendant

24   acquired through its unfair practices." <u>Id.</u> at 1498; *accord* <u>People ex. Rel. Harris v.</u>

25   <u>Sarpas</u>, 225 Cal. App. 4th 1539, 1562 (2014) (limiting restitution to sums paid

26   directly to defendants "would allow UCL [] violators to escape restitution by

27   structuring their schemes to avoid receiving direct payment from their victims.")

28

1    In sum, as long as the amounts sought as restitution are reasonably tied to
2  money or property in which Plaintiff has an ownership interest in, the money or
3  property does <u>not</u> have to have been provided by Plaintiff to Defendant to be within
4  the ambit of the remedy of restitution under the UCL.

5                              **V.    <u>CONCLUSION.</u>**

6    For all of the foregoing reasons, Plaintiff INFLUENCES, INC. respectfully
7  requests that the Court deny Defendant's motion to dismiss in its entirety, except
8  for the First Claim.   Alternatively, Plaintiff requests leave to amend should the
9  Court determine any such need exist.

10

11  Dated:  June 24, 2022                    **WALKER LAW, PC**

12

13                          By:      _/s/ Justin O. Walker_

14                                Justin O. Walker
                                  Lorrie A. Walker
15                                Jared A. Veliz
                                  Attorneys for Plaintiff INFLUENCES, INC.
16

17

18

19

20

21

22

23

24

25

26

27

28